**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

JULIE A. SU, Acting Secretary of Labor,                                            PLAINTIFF
United States Department of Labor

V.                                                                              NO. 4:21-CV-123-DMB-DAS

JESSE'S CLEANING SERVICE, LLC;
and JESSE TALIAFERRO, an individual                                          DEFENDANTS

### OPINION AND ORDER

The United States Secretary of Labor brought this action on behalf of two former employees of Jesse's Cleaning Service, LLC, following an investigation into the employees' reports of violations of the Families First Coronavirus Response Act. The parties filed cross-motions for summary judgment. For the reasons explained below, the Acting Secretary's summary judgment motion will be granted in part as to the retaliation claim and as to related back wages, compensatory damages, and liquidated damages; and the defendants' summary judgment motion will be denied.

**I
Relevant Procedural History**

On September 24, 2021, Martin J. Walsh, then Secretary of Labor of the United States Department of Labor, filed a complaint in the United States District Court for the Northern District of Mississippi against Jesse's Cleaning Service, LLC ("JCS"), and Jesse Taliaferro. Doc. #1. The complaint asserts violations of the Families First Coronavirus Response Act ("FFCRA") and the Fair Labor Standards Act ("FLSA") based on allegations that the defendants (1) failed to pay Kiowanna Brown and Christie McNeal, former JCS employees, for time they were absent from work while being tested for COVID-19 and awaiting test results, and (2) terminated Brown and

McNeal after they raised their right to be paid under the Emergency Paid Sick Leave Act ("EPSLA") and contacted the Department of Labor.[1]  *Id.* at 3, 7.

On February 15, 2022, the Clerk of Court, on the Secretary's motion, entered a default against the defendants.  Doc. #18.  On May 4, 2022, the Secretary moved for a default judgment, Doc. #21, and on May 16, 2022, the defendants moved to set aside the default, Doc. #24.  The following day, the defendants answered the complaint.  Doc. #26.  Subsequently, the Court set aside the default and denied as moot the Secretary's motion for default judgment.  Doc. #32.

On July 27, 2023, Julie A. Su, Acting Secretary of Labor,[2] filed a motion for summary judgment, Doc. #77, and the defendants filed a motion for summary judgment, Doc. #80.[3]  The Acting Secretary's summary judgment motion is fully briefed.  Docs. #79, #87, #90.  The Acting Secretary responded to the defendants' summary judgment motion, Doc. #84, but the defendants did not reply.[4]

## II
## Standard

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a

---

[1] The complaint's introduction states that the Secretary also brings this action pursuant to the EPSLA but the "Violation" section specifies only the FFCRA and the FLSA.  Doc. #1 at 1, 7.  The complaint does allege though that the defendants "willfully violated … the FFCRA … and … the FLSA" by terminating Brown and McNeal "because they took leave and asserted their rights to paid leave under the EPSLA …."  *Id.* at 7.

[2] Su was formally substituted for Walsh on December 4, 2023.  Doc. #107.

[3] The Court denied the parties' earlier motions for summary judgment due to "filing errors and procedural deficiencies."  Doc. #76 at 1.

[4] The Acting Secretary filed a motion in limine on October 17, 2023, Doc. #94; and the defendants filed a motion in limine two days later, Doc. #96.  The motions in limine will be addressed by separate order.

verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (citation omitted). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in that party's favor. At the same time, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citation omitted). "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Where, as here, the "parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019) (citation omitted). When "the movant bears the burden of proof at trial, the movant must establish beyond peradventure all of the essential elements of the claim … to warrant judgment in his favor." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). If the moving party satisfies his or her initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). When the movant would not bear the burden of persuasion at trial, he or she may satisfy the initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing*, LLC, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). And when "a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient

evidence to demonstrate that a genuine issue of material fact exists on every element of a claim." *Aguillard v. La. Coll.*, 824 F. App'x 248, 250 (5th Cir. 2020) (citation omitted).

### III
### Factual Background

Jesse Taliaferro owns and operates Jesse's Cleaning Service, LLC, a company that provides janitorial workers to clients in Greenville, Mississippi, and Indianola, Mississippi. Doc. #1 at 2; Doc. #26 at PageID 180; Doc. #78-1 at 14. Kiowanna Brown and Christie McNeal began working for JCS on, respectively, April 1, 2020, and June 24, 2020. Doc. #78-3 at PageID 1036, 1040; Doc. #78-1 at 23–24. Both were assigned to work at a Dollar General Corporation Distribution Center located in Indianola, Mississippi. Doc. #78-1 at 21; Doc. #78-11 at PageID 1087.

On August 11, 2020, Tracy Jackson, manager of JCS, met with Brown, McNeal, and one other employee at the Dollar General warehouse. Doc. #78-8 at PageID 1079. While Jackson was at the Dollar General warehouse, Brown informed Jackson that she and McNeal had been exposed to COVID-19 and asked if they could get tested for COVID-19. *Id.* at PageID 1080. She also asked Jackson if they would be paid for work they missed while getting tested. Doc. #78-2 at 16. Jackson responded that it would depend on what the test results were. *Id.*

Two days later, on August 13, 2020, Brown met with Jackson and gave her work releases she and McNeal received from Dr. Luther Oakes which stated they were "seen by Dr. Luther Oakes on 8/13/2020" and "authorized to return to work on 8/18/2020." Doc. #78-9; Doc. #1 at 4; Doc. #26 at PageID 181. Jackson informed Brown that the work releases needed to include the reason for the leave. Doc. #78-8 at PageID 1080. Brown responded that the reason for the leave was that they had been tested for COVID-19. *Id.*

Also on August 13, Brown presented Jackson with a copy of a flyer that had been posted

at the Dollar General warehouse describing employees' right to paid sick leave under the Families First Coronavirus Response Act and she and McNeal asked Jackson if they would be paid for work they missed while awaiting their COVID-19 test results. Doc. #1 at 4–5; Doc. #26 at PageID 181. The parties seem to dispute whether Jackson provided a definitive response.[5]

On August 18, 2020, Brown and McNeal informed Jackson that they would not be returning to work that day because they had not received their test results. Doc. #1 at 5; Doc. #26 at PageID 181. The same day, Brown contacted the Wage and Hour Division of the U.S. Department of Labor ("WHD") on behalf of herself and McNeal and spoke with WHD Technician Norma Kinder to report JCS's failure to provide them with paid sick leave while awaiting their COVID-19 test results. Doc. #78-11; Doc. #78-12 at PageID 1090–91. After speaking with Brown, Kinder called JCS. Doc. #78-12 at PageID 1091. Kinder was unable to reach Taliaferro but spoke with Jackson. *Id.* Jackson informed Taliaferro she had received a call from the WHD about Brown and McNeal. Doc. #78-2 at 41–42.

On August 19, 2020, Kinder spoke with Taliaferro and informed him of Brown and McNeal's right to paid sick leave under the FFCRA. Doc. #1 at 6; Doc. #26 at PageID 182; Doc. #78-12 at PageID 1091. Brown and McNeal then visited JCS's office and provided Jackson with new work releases signed that same day which stated they were "seen by Dr. Luther Oakes on 8-13-20" and "authorized to return to work on upon return of COVID-19 Test." Doc. #1 at 6; Doc. #26 at PageID 182; Doc. #78-13 at PageID 1093–94. Brown also informed Jackson she had

---

[5] The Acting Secretary argues that "Jackson did not provide a definitive response as to whether [Brown and McNeal] would be paid for the time they missed while waiting for their COVID-19 test results." Doc. #79 at 6. Regarding Jackson's testimony that whether Brown and McNeal would be paid would depend on the result of their COVID-19 tests, the defendants submit that Brown and McNeal "would get paid if they followed very simple, reasonable requests and instructions." Doc. #87 at 2. However, the portion of Jackson's testimony the defendants cite refers to Jackson's response to Brown's question about payment when Brown and McNeal asked for leave to get tested, not when Brown asked about payment again after giving Jackson the first set of work releases. Doc. #78-2 at 15–16.

contacted the WHD.  Doc. #78-8 at PageID 1080.

During a phone call to Brown on August 18 or 19, 2020, Jackson informed Brown that she and McNeal no longer worked for JCS.  Doc. #78-2 at 45–46.  Jackson prepared two disciplinary notices dated August 19, 2020, indicating JCS had committed to hiring replacements for them "due to no contact."  Doc. #78-16 at PageID 1102–03, 1104–05.  The section of the notices titled "Details of Violation and Specific Dates" is identical for both notices and states Brown and McNeal "Didn't call on the 8-18-20 for work when [they were] to return to work after being off on 8-13–8-18-20 Fail [sic] to contact employer about returning to work."  *Id.* at PageID 1102, 1104.  The "Action Taken" sections are also identical and represent that Jackson's "Atempt [sic] to reach by phone was failed no action was taken never gave results of COVID test."  *Id.*  Brown and McNeal were not paid for the work they missed from August 13, 2020, to August 19, 2020, while awaiting test results.  Doc. #78-4 at PageID 1054.

On August 31, 2020, the WHD opened an investigation into Brown and McNeal's reports of FFCRA violations by the defendants.  Doc. #78-6 at PageID 1068.  During the investigation, WHD Investigator Eric Nash took a statement from Jackson in which she advised that the defendants terminated Brown and McNeal.  *Id.* at PageID 1069; Doc. #78-8 at PageID 1080.

**IV**
**The Acting Secretary's Motion for Summary Judgment**

The Acting Secretary seeks summary judgment on all claims or, in the alternative, partial summary judgment with respect to any individual issue.  Doc. #77 at 3.

**A.  Paid Sick Leave**

The Acting Secretary argues the defendants violated the FFCRA's paid sick leave requirement when they failed to pay Brown and McNeal while they were awaiting their COVID-19 test results.  Doc. #79 at 10–11.  The defendants respond that they are exempt from the FFCRA

6

and that Brown and McNeal did not provide proper notice to take leave. Doc. #87 at 3–5. The Acting Secretary replies that (1) the defendants are not exempt from the FFCRA and waived this argument by failing to raise it in their answer; (2) Brown and McNeal provided adequate notice; and (3) if the defendants believed notice was inadequate, they were obligated to notify Brown and McNeal of the deficiency. Doc. #90 at 3–5.

The Emergency Paid Sick Leave Act is one of two divisions of the FFCRA which provided[6] temporary relief to workers affected by the COVID-19 pandemic.[7] Pub. L. No. 116–127, 134 Stat. 178. The EPSLA required employers to provide up to two weeks of paid sick leave to employees unable to work for "qualifying reasons." 29 C.F.R. §§ 826.20(a)(1), 826.21(a). Qualifying reasons included:

(i) The Employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19;

(ii) The Employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(iii) The Employee is experiencing symptoms of COVID-19 and seeking medical diagnosis from a health care provider;

(iv) The Employee is caring for an individual who is subject to an order as described in this paragraph (a)(1)(i) or directed as described in this paragraph (a)(1)(ii);

(v) The Employee is caring for his or her Son or Daughter whose School or Place of Care has been closed for a period of time, whether by order of a State or local official or authority or at the decision of the individual School or Place of Care, or the Child Care Provider of such Son or Daughter is unavailable, for reasons related to COVID-19; or

(vi) The Employee has a substantially similar condition as specified by the Secretary of Health and Human Services, in consultation with the Secretary of the Treasury and the Secretary of Labor. The substantially similar

---

[6] The FFCRA expired on December 31, 2020. Pub. L. No. 116-127, 134 Stat. 198.

[7] The FFCRA also contains the Emergency Family and Medical Leave Expansion Act ("EFMLEA"). Pub. L. No. 116–127, 134 Stat. 178.

condition may be defined at any point during the Effective Period.

29 C.F.R. § 826.20(a)(1).

Under the EPSLA, employers could require employees to follow "reasonable" notice procedures to take paid sick leave[8] but employers could not require notice in advance nor require notice to include documentation beyond what the EPSLA required. 29 C.F.R. § 826.90(c). To receive paid sick leave, the EPSLA required an employee to provide her employer with documentation containing (1) the employee's name, (2) the dates of requested leave, (3) the qualifying reason for leave, and (4) an oral or written statement that the employee is unable to work because of the qualifying reason for leave. 29 C.F.R. § 826.100(a). Documentation from employees experiencing symptoms and seeking medical diagnosis must have also included the name of the health care provider who advised the employee to self-quarantine because of COVID-19 concerns. 29 C.F.R. 826.100(d)(2). If an employee did not give proper notice, the employer was required to notify the employee and provide an opportunity to cure the deficiency. 29 C.F.R. § 826.90(a)(2). Because the EPSLA is enforced through the FLSA, an employer's failure to provide paid sick leave as required by the EPSLA is considered a failure to pay the minimum wage in violation of 29 U.S.C. § 206, section 6 of the FLSA. 29 C.F.R. § 826.150(b)(1).

Here, the parties do not dispute that the defendants did not pay Brown and McNeal for leave while they were awaiting COVID-19 test results. Nor do they dispute that the defendants are employers under the FFCRA.[9] However, they differ about whether Brown and McNeal

---

[8] 29 C.F.R. § 826.90(a)(1).

[9] The FFCRA defines an "employer" as:

> [A]ny person engaged in Commerce or in any industry or activity affecting commerce that: (1) In the case of a private entity or individual, employs fewer than 500 Employees; and (2) In the case of a Public Agency or any other entity that is not a private entity or individual, employs one or more Employees.

29 C.F.R. § 826.10(a)(i)(A) (paragraph numbering and spacing omitted). In their answer, the defendants admit they "engaged in commerce or any industry or activity affecting commerce and are private entities or individuals that

qualified for paid sick leave under the FFCRA. The Acting Secretary contends Brown and McNeal are employees "covered by the FFCRA's paid sick leave requirements because they were 'experiencing symptoms of COVID-19 and [] seeking a medical diagnosis.'" Doc. #79 at 11 (quoting 29 C.F.R. § 826.20(a)(1)). While it is undisputed that on August 13, 2020, Jackson allowed Brown and McNeal to leave work to get tested for COVID-19 after Brown advised her they were exposed to COVID-19, the summary judgment record contains conflicting evidence about whether they were experiencing COVID-19 symptoms. In both Brown's WHD complaint and her personal interview statement to the WHD, she represented that she and McNeal informed Jackson that they had COVID-19 symptoms when requesting leave to get tested. Doc. #78-11 at PageID 1087–88; Doc. #78-10 at PageID 1083. However, the summary judgment record also contains Jackson's statement to the WHD denying that Brown and McNeal stated they were experiencing COVID-19 symptoms when requesting leave for testing. Doc. #78-8 at PageID 1080. An employee establishes she was experiencing COVID-19 symptoms for purposes of the EPSLA when the documentation provided includes a statement about her symptoms. *See Spells v. Physician & Tactical Healthcare Servs., LLC*, 615 F. Supp. 3d 230, 235, 242 (D.N.J. 2022) (plaintiff was experiencing COVID-19 symptoms for FFCRA purposes when he texted his employer a copy of a doctor's note requiring isolation and stating he was experiencing symptoms); *Dono v. Ferman Motor Car Co.*, *Inc.*, No. 8:20-cv-2304, 2022 WL 1619596, at *5–6 (M.D. Fla. Mar. 25, 2022) (undisputed that plaintiff was "seeking medical attention in connection with a suspected COVID-19 infection" where medical excuse stated plaintiff was being tested for COVID-19 due to symptoms nurse practitioner observed and nurse practitioner provided corroborating deposition testimony). The work releases from Dr. Oakes state only that Brown and

---

employ fewer than 500 employees." Doc. #1 at 3; Doc. #26 at PageID 181.

McNeal were "seen" and "authorized to return to work on upon return of COVID-19 Test." Doc. #78-13. Consequently, a genuine issue exists as to whether they were experiencing COVID-19 symptoms for purposes of the EPSLA. *See O'Bryan v. Joe Taylor Restorations*, No. 20-80993, 2021 WL 2000372, at *1, *3 (S.D. Fla. Apr. 20, 2021) (genuine issue present where summary judgment record contained contradictory evidence regarding whether plaintiffs qualified for paid sick leave due to experiencing symptoms). Accordingly, the Acting Secretary's motion for summary judgment on the paid sick leave claim will be denied.[10]

## B. Retaliation

Regarding the claim that the defendants violated the EPSLA's anti-retaliation clause, the Acting Secretary argues that "the undisputed facts establish that [Brown and McNeal] … would not have been terminated 'but for' their efforts to take paid sick leave and/or their communications with WHD." Doc. #79 at 14. The defendants respond that the Acting Secretary cannot establish any of the necessary elements of a retaliation claim and that their reason for terminating Brown and McNeal's employment was not pretextual. Doc. #87 at 5–9. The Acting Secretary replies that the defendants took an adverse action against Brown and McNeal when they ended their employment immediately after they engaged in protected activity and when the defendants did not follow their own disciplinary policy for ending their employment. Doc. #90 at 5–8.

The EPSLA prohibits an employer from "discharging, disciplining, or discriminating against any Employee because such Employee took Paid Sick Leave under the EPSLA" or "because such Employee has filed any complaint or instituted or caused to be instituted any

---

[10] Because the Court concludes there is a genuine fact issue as to whether Brown and McNeal experienced a "qualifying reason" for paid sick leave under the FFCRA, it does not consider whether the Acting Secretary's summary judgment motion should be denied based on the adequacy of the notice provided. For the same reason, the Court declines to consider the defendants' argument that the Acting Secretary's summary judgment motion on the paid sick leave claim should be denied based on the small business exemption to the FFCRA. However, both arguments will be addressed with regard to the defendants' motion for summary judgment.

proceeding, including an enforcement proceeding, under or related to the EPSLA." 29 C.F.R. § 826.150(a). An employer who retaliates against an employee as described in § 826.150(a) violates 29 U.S.C. § 215(a)(3), the anti-retaliation provision of the FLSA. 29 C.F.R. § 826.150(b)(2).

EPSLA retaliation claims based on indirect evidence are evaluated using the Title VII burden-shifting analysis. *Wilson v. Marshall Shredding, LLC*, No. 22-50709, 2023 WL 3151078, at *3 (5th Cir. Apr. 28, 2023). The Title VII burden-shifting analysis "requires a plaintiff first to set out a prima facie case of retaliation, before shifting the burden to the defendant to state a legitimate, non-discriminatory reason for its action, before finally requiring a plaintiff to show that the reason articulated by the defendant is pretext for retaliation." *Bourgeois v. Miss. Valley State Univ.*, 507 F. App'x 386, 388 (5th Cir. 2013) (citation omitted).

### 1. Prima facie case

To establish a prima facie case of retaliation, a plaintiff must show "(1) that she engaged in activity protected by [the relevant statute], (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Id.*; *see Atwood v. JCF Residences Mgmt. Co.*, No. 1:20-cv-56, 2022 WL 185187, at *8 (M.D. Tenn. Jan. 19, 2022) (stating elements of a prima facie case of retaliation under the FFCRA).

#### a. Protected Activity

The Acting Secretary argues Brown and McNeal engaged in protected activity "when they asserted their right to paid sick leave … and … when they contacted WHD to complain about Defendants' failure to provide them with paid sick leave." Doc. #79 at 14–15. The defendants respond that Brown and McNeal did not engage in protected activity because they did not take leave in accordance with their policies or the FFCRA requirements and because they were not aware Brown and McNeal had contacted the WHD. Doc. #87 at 6. The Acting Secretary replies

that Brown and McNeal adhered to the FFCRA in taking leave and that it "is both irrelevant and demonstrably false" that the defendants did not know they called the WHD.  Doc. #90 at 5–6.

Taking leave is a protected activity under the EPSLA when the employee has satisfied the Act's requirements.  29 C.F.R. § 826.150(a); *see Wilson v. Marshall Shredding, LLC*, 616 F. Supp. 3d 633, 643 (W.D. Tex. 2022) ("Taking valid leave pursuant to the provisions of the EPSLA is a necessary condition for success on an EPSLA retaliation claim.").  And filing a complaint with the WHD for an alleged violation of the FFCRA's paid sick leave requirement is also a protected activity.  *See* 29 C.F.R. § 826.150(a) (prohibiting retaliation against employees for "fil[ing] any complaint or institut[ing] or caus[ing] to be instituted any proceeding, including an enforcement proceeding, under or related to the EPSLA"); *Wilson*, 2023 WL 3151078 at *3 (filing a complaint for violation of paid sick leave requirement is protected activity under the FFCRA); *see also Haynes v. Crescent Real Estate Equities, LLC*, No. H-11-2201, 2012 WL 2574749, at *4 (S.D. Tex. July 2, 2012) (under the FLSA anti-retaliation provision, 29 U.S.C. § 215(a)(3), which uses language identical to the FFCRA, "[a] plaintiff engages in protected activity … if she … files a complaint").

Since there is a genuine factual dispute as to whether Brown and McNeal's leave complied with FFCRA requirements, there is also a genuine dispute regarding whether they engaged in protected activity by attempting to take leave under the Act.  *See Wilson*, 616 F. Supp. 3d at 643 ("The FFCRA/EPSLA … protects only an employee who [] takes leave in accordance with [the] Act.") (citations and internal quotation marks omitted).  But it is undisputed that Brown and McNeal contacted the WHD to report the defendants' alleged violation of the FFCRA by failing to provide paid sick leave.[11]  While the defendants argue Brown and McNeal's contact with the

---

[11] *See* Doc. #78-11; Doc. #78-12 at PageID 1090–91.

WHD does not constitute protected activity because they were unaware of such contact, they do not cite any authority to support the argument. *See generally* Doc. #87 at 6. Further, filing a complaint with the WHD to allege a violation of the FFCRA is a protected activity. *Wilson*, 2023 WL 3151078, at *3; *see Haynes*, 2012 WL 2574749, at *4 ("A plaintiff engages in protected activity … if she … files a complaint."). For these reasons, the Acting Secretary has established the protected activity element.

### b. *Adverse Employment Action*

The Acting Secretary argues the defendants took an adverse employment action against Brown and McNeal when they ended their employment. Doc. #79 at 15. The defendants respond that Brown and McNeal "'quit' their jobs" and that although "Jackson admitted that Defendants 'terminated' [them] and 'let them go,'" these admissions are contradicted by Jackson's deposition testimony that she never said "you're fired" or "you're terminated" when she informed Brown and McNeal they no longer worked for JCS. Doc. #87 at 7. The Acting Secretary replies that at several points in the record,[12] including the defendants' response and some of Jackson's deposition testimony, the defendants admit they terminated Brown and McNeal and that such "extensive admissions indisputably establish that Defendants took an adverse action – termination – against [Brown and McNeal]." Doc. #90 at 7.

"[A]dverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Stuntz v. Lion Elastomers,*

---

[12] The Acting Secretary relies on (1) the defendants' statement in their response memorandum that "[Brown and McNeal] were terminated," Doc. #87 at 10; (2) the defendants' motion for summary judgment which admits as undisputed that the defendants terminated Brown and McNeal, Doc. #81 at 3; (3) Jackson's statement to the WHD that the defendants terminated Brown and McNeal and let them go, Doc. #78-8; (4) the defendants' response to a formal Request for Information from the Mississippi Department of Employment Security in which they selected the box indicating Brown and McNeal were "fired/discharge[d]," Doc. #78-14; and (5) Jackson's deposition testimony that she told Brown and McNeal they no longer worked for JCS and that Taliaferro made that decision, Doc. #78-2 at 45, 42; Doc. #90 at 7.

*L.L.C.*, 826 F. App'x 391, 403 (5th Cir. 2020) (quoting *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014)); *McCoy v. City of Shreveport*, 432 F.3d 551, 560 (5th Cir. 2007)). "An employer need not use the term 'fired' in order for a discharge to occur. The test of whether an employee was discharged depends upon the reasonable inferences that the employee[] could draw from the language used by the employer." *Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 944 (N.D. Fla. 2015) (citing *NLRB v. Ridgeway Trucking Co.*, 622 F.2d 1222, 1224 (5th Cir. 1980)).

Although the defendants contend Jackson did not use the term "fired" or "terminated" when she ended Brown and McNeal's employment, Jackson admitted the purpose of her call was to inform them that they no longer worked at JCS. Doc. #78-2 at 45–46. It is more than reasonable for Brown and McNeal to infer that if Jackson informed them they no longer worked for JCS then they were discharged. *See Keller*, 181 F. Supp. 3d at 944 (whether an employee was discharged depends on the reasonable inferences that the employee could draw from the employer's language). Additionally, the defendants do not identify any evidence—other than Jackson's inconsistent deposition testimony—to rebut their extensive admissions that Brown and McNeal were terminated. Doc. #87 at 7. "[T]here is no issue of material fact" where the defendant "has come forward with no evidence, aside from his own self-serving and contradictory deposition testimony." *Wilson v. Churchill Downs La. Horseracing Co., LLC*, No. 10-4437, 2011 U.S. Dist. LEXIS 113791, at *5 (E.D. La. Sept. 30, 2011) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075) (5th Cir. 1994)). So the Acting Secretary has established the adverse employment action element. *See Little*, 37 F.3d at 1075 ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy.").

### c. *Causation*

The Acting Secretary submits causation is established by temporal proximity because

Brown and McNeal were terminated "mere hours" after the defendants became aware of their contact with the WHD.[13]  Doc. #79 at 16–17.  The Acting Secretary also relies on *Schroeder v. Greater New Orleans Federal Credit Union*[14] to argue "additional evidence" demonstrates causation because the defendants deviated from their typical policies and procedures when they (1) disciplined Brown and McNeal for being absent despite the two doctor's notes; and (2) immediately terminated them for missing work rather than issuing a "verbal warning."  *Id.* at 17.

The defendants respond that causation has not been established because (1) "the actual date of 'termination' or replacement" was before they became aware of Brown and McNeal's contact with the WHD; (2) Brown and McNeal were not fired but quit by not communicating or showing up to work; and (3) the deviation from their policy was limited to their failure to issue a verbal warning, which was unavoidable because Brown and McNeal were not at work to receive a verbal warning before they were terminated.  Doc. #87 at 6, 8.

The Acting Secretary replies that (1) the undisputed facts show the defendants terminated Brown and McNeal after their engagement in protected activity; (2) the defendants repeatedly admitted they were in contact with Brown and McNeal up until their termination; and (3) during these conversations leading up to the termination, the defendants could have followed their verbal warning policy.  Doc. #90 at 6–8.

"[A]t the prima facie case stage … causation [can be established] by showing close enough timing between … protected activity and … adverse employment action. However, the protected

---

[13] The Acting Secretary also argues that causation is established by temporal proximity because "mere days" separated Brown and McNeal informing the defendants of their right to paid sick leave and their termination.  Doc. #79 at 16–17.  However, as explained above, because there is a genuine fact issue regarding whether Brown and McNeal took leave in accordance with the Act, there is a genuine fact issue as to whether such conduct is protected activity.  *See Wilson*, 616 F. Supp. 3d at 643.  Accordingly, the Court does not consider on summary judgment the causal connection between those actions and Brown and McNeal's termination.

[14] 664 F.3d 1016, 1024 (5th Cir. 2011).

act and the adverse employment action must be very close in time to establish causation by timing alone." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (cleaned up). "[The Fifth Circuit] has found, for example, that a time lapse of up to four months may be sufficiently close, while a five month lapse is not close enough without other evidence of retaliation." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (quotations and citations omitted).

To establish causation by temporal proximity, the Acting Secretary relies on Jackson's statement to the WHD that she was informed of Brown and McNeal's contact with the WHD before they were terminated. Doc. #78-8 at PageID 1080. The defendants cite no evidence in support of their assertion that the date of termination was before the date they became aware of Brown and McNeal's contact with the WHD. *See generally* Doc. #87. And contrary to such assertion, it is undisputed that the WHD contacted the defendants to inform them of Brown and McNeal's right to paid sick leave on August 19, 2020,[15] and that the same day the defendants created disciplinary notices stating Brown and McNeal were being replaced. Doc. #78-16.

Regarding deviations from the defendants' disciplinary policy, the Acting Secretary relies on the defendants' handbook and Taliaferro's deposition testimony to argue the defendants had a policy of excusing absences accompanied by doctors' notes and issuing verbal warnings prior to termination. Doc. #78-1 at 28, 45. The defendants do not contest the existence of such a policy[16] and cite no evidence showing they could not issue a verbal warning to Brown and McNeal while they were not at work. *See generally* Doc. #87. Because Brown and McNeal were terminated the

---

[15] Doc. #1 at 6; Doc. #26 at PageID 182.

[16] While they do not contest the existence of a verbal warning policy, the defendants baldly argue in their response that the policy did not exist at the point Brown and McNeal were terminated. Doc. #87 at 2. Arguing that Brown and McNeal were not at work to receive a verbal warning in accordance with the handbook suggests the verbal warning policy existed when Brown and McNeal were terminated.

same day the defendants learned of their contact with the WHD and because the defendants fail to raise a genuine issue regarding the deviation from their typical policies, the Acting Secretary has established causation for her prima facie case of retaliation. *See Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (time lapse of five days is sufficient to establish causation in prima facie case of retaliation); *Schroeder*, 664 F.3d at 1024 (deviation from typical policies cuts in favor of establishing causation).

### d.  Summary

The Acting Secretary has a prima facie case of retaliation because she established Brown and McNeal engaged in protected activity, the defendants took an adverse employment action against them, and Brown and McNeal were terminated for engaging in such protected activity.

### 2.  Legitimate reason

The reasons the defendants offer for terminating Brown and McNeal are (1) they "did not communicate;" (2) they "did not provide test results;" (3) they "refused to return to work after agreeing to provide test results;" and (4) "[p]oor job performance." Doc. #87 at 8–9. The defendants argue that Jackson "explains in her deposition that [Brown and McNeal] did failed [sic] to perform [these] tasks, but most importantly, they failed to return to work." *Id.* at 9. The defendants then quote, without citation to the record, Jackson's deposition testimony that she called Brown and McNeal to determine whether they had their test results, which would allow them to return to work, and that they did not return to work after August 18 or August 19 with their test results. *Id.*

Failure to comply with employer directives and poor job performance are legitimate nondiscriminatory reasons for adverse employment actions. *See Kopszywa v. Home Depot USA, Inc.*, 620 F. App'x 275, 278–79 (5th Cir. 2015) (employer articulates a legitimate,

nondiscriminatory reason for termination by contending an employee failed to abide by company policies and directives); *Benjamin v. Felder Servs., L.L.C.*, 753 F. App'x 298, 302 (5th Cir. 2018) ("[The Fifth Circuit has] repeatedly recognized that poor job performance is a legitimate, nondiscriminatory reason for firing an employee."). However, the defendants, as the parties opposing summary judgment, are "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports [their] claim." *Muslow v. La. State Univ.*, No. 22-30585, 2023 WL 5498952, at *3 (5th Cir. Aug. 24, 2023) (citations omitted). The defendants' uncited conclusory statement that Jackson's deposition testimony explains how Brown and McNeal failed to comply with their directives or had poor job performance does not "identify specific evidence" much less "articulate the precise manner in which" the testimony supports their claims. *Id.*; *see Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (court has no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment"). And the defendants do not explain how the quoted portion of Jackson's deposition testimony supports their proffered reason that Brown and McNeal refused to return to work with their test results. *See generally* Doc. #78 at 8–9. So the Court concludes the defendants have not satisfied their burden of producing a legitimate reason for ending Brown and McNeal's employment.[17]

---

[17] This Court then need not address the issue of pretext. But it seems pretext may be found based on the arguments and evidence. The Acting Secretary argues that the "ever-changing and inconsistent" nature of the defendants' reasons suggests pretext and that the record shows the reasons are either false or unworthy of credence. Doc. #79 at 18–19. To prove the defendants' proffered reason that Brown and McNeal failed to communicate is false, the Acting Secretary points to the defendants' answer to the complaint admitting they spoke to Brown and McNeal on August 18 and August 19, 2020. Doc. #79 at 20; Doc. #1 at 5–6; Doc. #26 at PageID 181–82. The Acting Secretary also argues that while the defendants cite failure to provide COVID-19 test results and failure to return to work with the test results, they knew Brown and McNeal had not received their test results when they terminated them. Doc. #79 at 20–21, 8; Doc. #87 at 3. Further, the Acting Secretary argues the fourth reason is false because Taliaferro admitted during his deposition that there were no job performance issues. Doc. #79 at 21; Doc. #78-1 at 42. In response, the defendants reiterate the argument that Brown and McNeal failed to return to work. Doc. #87 at 9. The Acting Secretary replies that the defendants "repeatedly admitted they terminated [Brown and McNeal] and, further, that they were in regular contact with [them] up to the date [of their] termination. Doc. #90 at 7. Pretext is established by substantial evidence that the legitimate, nondiscriminatory reason is false or unworthy of credence. *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 320 (5th Cir. 2014); *see Smith v. City of Martinville*, 575 F. App'x 435, 441 (5th Cir. 2014) ("A plaintiff may be able to put into question the genuineness of the employer's putative non-discriminatory purpose by arguing

### 3. Summary

Because the Acting Secretary has shown a prima facie case of retaliation and the defendants have cited no evidence to support the potentially legitimate reasons for Brown and McNeal's termination they identify, the Acting Secretary's motion for summary judgment will be granted on the issue of retaliation. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (under *McDonnell Douglas* burden shifting, if the plaintiff presents a prima facie case of discrimination and the defendant fails to carry its burden of producing evidence of a legitimate nondiscriminatory reason for its conduct, "the court must award judgment to the plaintiff as a matter of law"); *see also Johnson v. Manpower Prof'l Servs.*, 442 F. App'x 977, 983 (5th Cir. 2011) (reversing summary judgment for employer where employee established a prima facie case of discrimination but employer offered no legitimate reason for its conduct).

### C. Damages and Injunctive Relief

The Acting Secretary seeks summary judgment on her claims for damages and injunctive relief.

### 1. Damages

The Acting Secretary argues the defendants are jointly and severally liable for $56,196.00 in back wages (which includes $360.00 in back wages to Brown and McNeal each for the defendants' failure to provide sick leave from August 13–19, 2020, plus $27,738.00 to each in back wages for the defendants' termination in retaliation against them from August 20, 2020,

---

that the stated purpose is implausible, absurd or unwise."). Here, the Acting Secretary identified evidence demonstrating that the defendants' proffered reasons are false or implausible. *See* Doc. #79 at 18–21; Doc. #90 at 7. Consequently, the Acting Secretary has demonstrated such reasons are pretextual. And because the defendants either conceded (by failing to respond to) or failed to contradict such arguments, no actual controversy exists on the issue of pretext. *See Moore v. Solar Grp.*, No. 2:07-cv-182, 2008 WL 4373016, at *2 (S.D. Miss. Sept. 23, 2008) ("actual controversy exists only 'when both parties have submitted evidence of contradictory facts'") (quoting *Little*, 37 F.3d at 1075); *see also Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-cv-432, 2021 WL 9893514, at *5 (N.D. Tex. Sept. 17, 2021) ("A party may implicitly concede an argument by not responding to it.") (citing *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016)).

through November 30, 2021); liquidated damages equal to 100% of the back wages owed; and $16,749.88 in compensatory damages. Doc. #79 at 21–22, 25. The defendants respond that they are not liable for liquidated damages because they acted reasonably and in good faith and that damages otherwise cannot be awarded on summary judgment because Brown and McNeal's testimony is required to prove damages. Doc. #87 at 10. The Acting Secretary replies that the defendants did not act in good faith, and the record contains sufficient evidence to award damages because the damages calculations are based on "objective sources primarily obtained from Defendants, i.e. payroll records and timesheets, not [Brown and McNeal's] testimony." Doc. #90 at 8–9.

An employer's failure to provide paid sick leave as required by the EPSLA is considered a failure to pay the minimum wage under § 6 of the FLSA and triggers the enforcement provisions in §§ 16 and 17 of the FLSA. 29 C.F.R. § 826.150(b)(1). Similarly, an employer that violates the EPSLA's anti-retaliation provision violates § 15(a)(3) of the FLSA and is subject to the same enforcement provisions. 29 C.F.R. § 826.150(b)(2).

Section 16 of the FLSA provides that "any employer who violates [§ 15(a)(3) of the FLSA] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [§] 15(a)(3) … including … payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A court may decline to award liquidated damages if the employer satisfies the "substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003) (citations and quotations marks omitted). Though it appears the Fifth Circuit has not addressed

the availability of compensatory damages under the FLSA,[18] "every Circuit to address the issue … ha[s] expressly allowed compensatory damages … in the context of a retaliation claim under the FLSA." *Lee v. United States Sec. Assocs. Inc.*, No. 07-CA-395, 2008 WL 958219, at *7 (W.D. Tex. Apr. 8, 2008) (collecting cases).

The Acting Secretary relies on the calculations of WHD Investigator Eric Nash to support her claim that the defendants are liable to Brown and McNeal each for $360.00 in back wages for the work they missed while awaiting their COVID-19 results and $27,738.00 in back wages for retaliatory termination. Doc. #78-6. Nash's calculations of back wages are based partly on the average number of hours Brown and McNeal worked at their regular rate of pay and the average number of hours they worked at their overtime rate of pay, as reflected by the defendants' payroll records. *Id.* at 3–4. The total back wage calculation for retaliatory discharge covers the period from August 20, 2020 (the day after Brown and McNeal were terminated), through the end of November 2021 (when they informed the WHD they obtained new employment). *Id.* at 4. The Acting Secretary also relies on Nash's calculations to establish the defendants' liability for $16,749.88 in compensatory damages suffered by Brown due to the defendants' termination of her employment. *Id.* at 4–5. Nash's compensatory damages calculations are based on Brown's declaration describing her losses and bill statements. *Id.*

The defendants cite no authority for their argument that Brown and McNeal's testimony is required to establish damages. *See generally* Doc. #87 at 10. However, courts may not award damages on summary judgment if the damages calculation is based on disputed facts. *See Camowraps, L.L.C. v. Quantum Digital Ventures, LLC*, 74 F. Supp. 3d 730, 741–42 (E.D. La.

---

[18] *See Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (compensatory damages for pain and suffering are unavailable under identical language in the Age Discrimination in Employment Act, but the Fifth Circuit "express[es] no view on how the remedial language discussed above should be applied in FLSA retaliation cases").

2015) (determining appropriateness of damages based on whether there were any genuine factual disputes); *Baugh v. Voyager Indem. Ins. Co.*, No. 19-14275, 2020 WL 7042859, at *6 (E.D. La. Dec. 1, 2020) (denying summary judgment on damages where the damages estimate was based on disputed issues of fact); *cf. AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010) ("[C]ourts do routinely award damages that are readily calculable based on the undisputed facts on summary judgment.").

As discussed above, there is a genuine dispute as to whether the defendants violated the FFCRA's paid sick leave requirement. Thus, the Acting Secretary's motion for damages on summary judgment will be denied to the extent it seeks damages based on the defendants' alleged paid sick leave violation.

Regarding damages for the defendants' anti-retaliation violation, the parties do not dispute the validity of the average hours Brown and McNeal worked, or the amount of their regular pay rate and overtime pay rate. However, the defendants challenge the period for which back wages were calculated, and the losses Brown claims she suffered. Doc. #79 at 4; Doc. #87 at 3. But the defendants do not cite any evidence to support their argument that the Acting Secretary incorrectly calculated the time period of back wages or the scope of losses Brown suffered in compensatory damages. *See* Doc. #87 at 3. Because there are no genuine factual disputes regarding the calculations of back wages and compensatory damages resulting from the defendants' retaliation against Brown and McNeal, the Acting Secretary's summary judgment motion for such damages will be granted.

As to the Acting Secretary's request for liquidated damages equal to the amount of back wages owed, the defendants argue the Court should exercise its discretion to deny such damages because Brown and McNeal were terminated in good faith and based on reasonable grounds. Doc.

#87 at 10. In support of this argument, the defendants state, without citation to record evidence, that Brown and McNeal did not return to work on August 18 as the first doctor's note indicated they would, and "they never produced a test or indicated subsequent to the deadline on their first note that a test may be forthcoming." *Id.* "[G]ood faith requires a duty to investigate potential liability under the FLSA." *Steele v. Leasing Enters.*, 826 F.3d 237, 246 (5th Cir. 2016) (internal quotation marks and citation omitted). The defendants not only fail to support their claims with evidence from the record but also fail to satisfy the "'substantial burden' of demonstrating good faith and a reasonable belief that [their] actions did not violate the FLSA" because they have not shown that they investigated their potential liability. *Singer*, 324 F.3d at 823; *see Steele*, 826 F.3d at 247 (defendant proved good faith and reasonableness when he presented evidence that the Department of Labor informed him his restaurant's tipping practices were compliant with the FLSA); *Patterson v. Dall./Fort Worth Int'l Airport Bd.*, 490 F. Supp. 3d 1034, 1046 (N.D. Tex. 2020) (declining to award liquidated damages on summary judgment based on lack of good faith when the defendant presented evidence that its legal counsel advised it on the FLSA's requirements); *In re Hard-Mire Rest. Holdings, LLC*, 605 B.R. 739, 757–58 (Bankr. N.D. Tex. 2019) (defendant did not meet its burden to prove good faith and reasonableness when there was no evidence of an "honest intention to ascertain what the FLSA required and to act in accordance with it"). Accordingly, the Acting Secretary's summary judgment motion for liquidated damages equal to the amount of retaliation back wages owed will be granted.

## 2. Injunctive Relief

The Acting Secretary seeks summary judgment on its claim for injunctive relief "permanently barring Defendants, their agents, servants, employees, and all persons in active concert or participation with them from violating §§ 6 and 15(a)(3) of the [FLSA]." Doc. #77 at

3. It argues an injunction is appropriate because the defendants (1) did not pay Brown and McNeal for work missed while awaiting their COVID-19 test results, even after the WHD called to inform the defendants of their right to paid sick leave; (2) retaliated against Brown and McNeal for engaging in protected activity by terminating their employment; (3) "invented false reasons to cover up those terminations" when the WHD investigation started; and (4) have made no promises of future compliance. Doc. #79 at 26 & n.11. The defendants did not respond to the motion's request for injunctive relief. *See generally* Doc. #87. While "a motion for summary judgment cannot be granted simply because there is no opposition, a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015) (cleaned up).

Section 17 of the FLSA authorizes district courts to grant injunctive relief restraining future violations of the FLSA once a violation has been established. 29 U.S.C. § 217; *Chao v. M & D, Inc.*, No. G-05-674, 2007 WL 1168664, at *1 (S.D. Tex. Apr. 18, 2007) (citing *Shultz v. Hinojosa*, 432 F.2d 259, 260 (5th Cir. 1970)). Whether to grant a permanent injunction under section 17 of the FLSA is within the discretion of the district court, subject to consideration of (1) "the previous conduct of the employer," and (2) "the dependability of his promises for future compliance." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 404 (E.D.N.Y. 2013) (citing *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975)). Previous conduct weighs in favor of granting injunctive relief when a defendant has been previously investigated for FLSA violations or agrees to comply with the Act but fails to do so. *See, e.g.*, *Hodgson v. Griffin & Brand, Inc.*, 471 F.2d 235, 238 (5th Cir. 1973) (affirming district court grant of injunctive relief where there were past violations of the FLSA); *Gatlin v. Mitchell*, 287 F.2d 76, 80 (5th Cir. 1961) (injunctive relief appropriate where the employer agreed to correct violations but the violations remained "persistent and continuous").

Promises for future compliance weigh in favor of granting an injunction when the defendant's conduct has shown future violations are likely. *See Wirtz v. Atlas Roofing Mfg. Co.*, 377 F.2d 112, 116 (5th Cir. 1967) ("finding by the court that there is no indication that future violations will occur is often a decisive factor in the court's decision to refuse to grant an injunction").

Here, a violation of § 15(a)(3) of the FLSA has been established because the Acting Secretary demonstrated the defendants violated the EPSLA's anti-retaliation provision. 29 C.F.R. § 826.150(b)(2) (an employer who violates the EPSLA anti-retaliation provision violates § 15(a)(3) of the FLSA). With respect to the defendants' previous conduct, the defendants' retaliatory termination of Brown and McNeal and their false reasons for the termination weigh in favor of an injunction, as these actions violated the FLSA. *See Shultz v. Salinas*, 416 F.2d 412, 414 (5th Cir. 1969) ("[W]hen an employer has committed a clear violation of the Act without valid excuse or explanation … an injunction should be issued.") (citations and quotation omitted). However, the defendants' failure to pay Brown and McNeal after initial contact with the WHD does not weigh in favor of granting an injunction. *See Hodgson v. Parke*, 324 F. Supp. 1297, 1302 (S.D. Tex. 1971) (refusal to comply after initial contact with the Department of Labor does not warrant injunctive relief because a "defendant cannot be penalized for exercising his right to a judicial determination").

Regarding the dependability of promises of future compliance, the Acting Secretary, citing *Perez v. Gulf Coast Management Company, LLC,*[19] argues the lack of promises from the defendants makes an injunction particularly appropriate. Doc. #79 at 26 n.11. However, the court in *Perez* found injunctive relief appropriate where the defendants had not made any promise of future compliance after agreeing to pay damages for a previous violation but failing to do so.

---

[19] No. 14-00426, 2015 WL 895098, at *11 (S.D. Ala. Mar. 3, 2015).

*Perez*, 2015 WL 895098, at *11.  Here, the Acting Secretary cites no evidence that the defendants failed to pay damages they agreed to pay as the result of a previous violation.  *See generally* Doc. #79.  Therefore, the second factor does not weigh in favor of granting an injunction.

Although the previous conduct factor favors granting an injunction, the dependability of promises for future compliance factor does not.  So the Court, in its discretion, finds injunctive relief should not be granted based on the Acting Secretary's summary judgment motion.  Accordingly, the Acting Secretary's motion for summary judgment on its claim for injunctive relief will be denied.

## V
## Defendants' Motion for Summary Judgment

The defendants seek summary judgment, or alternatively, partial summary judgment on the Acting Secretary's claims.  Doc. #80 at PageID 1140.

### A.  Paid Sick Leave

The defendants argue the Acting Secretary's paid sick leave claim fails because the defendants complied with the FFCRA since they were not required to provide Brown and McNeal with paid sick leave absent adequate notice.  Doc. #81 at 8.  The Acting Secretary responds that (1) the defendants failed to carry their burden as the party seeking summary judgment because they do not cite specific facts in the record to support their argument; and (2) the defendants cannot establish compliance with the FFCRA because they did not pay Brown and McNeal for work they missed while awaiting COVID-19 test results though Brown and McNeal provided the defendants with adequate notice of their paid sick leave with their second set of work releases.  Doc. #85 at 5–6, 7–8.  The defendants did not reply to these arguments.

As explained above, the EPSLA, a division of the FFCRA, requires employees seeking paid sick leave to provide notice through documentation containing (1) the employee's name; (2)

dates for which leave is requested; (3) the qualifying reason for leave; and (4) an oral or written statement that the employee is unable to work because of the qualified reason for leave. 29 C.F.R. § 826.100(a). If an employee is seeking paid sick leave based on the qualifying reason that she is experiencing COVID-19 symptoms and seeking medical diagnosis, she is further required to provide documentation containing the name of the healthcare provider. 29 C.F.R. § 826.100(d)(2). If an employee does not give proper notice, the employer should inform the employee and provide an opportunity to cure the deficiency. 29 C.F.R. § 826.90(a)(1).

The defendants argue Brown and McNeal failed to provide proper notice under the EPSLA because they "provided two doctors notes, one with a date of August 18, 2020, the other with no date, but a note that they could return upon COVID testing results." Doc. #81 at 8. Brown and McNeal's first work releases were deficient under the FFCRA because they did not include the qualifying reason for leave.[20] Doc. #80-4; *see* 29 C.F.R. § 826.100(a)(3) (requiring a qualifying reason for leave in documentation for paid sick leave). The second work releases attempted to cure the deficiency by stating that Brown and McNeal were authorized to return to work "upon return of COVID-19 test." Doc. #80-5. Although the defendants argue the second work releases did not provide proper notice because they did not include a date, the Acting Secretary contends the second work releases "extended the dates for which leave was requested until [Brown and McNeal] received their COVID-19 test results." Doc. #85 at 8. However, the Acting Secretary cites no authority for the assertion that requesting leave pending the return of test results complies with the FFCRA notice requirement that an employee's documentation include the dates of requested leave. *See generally* Doc. #85.

---

[20] The first work releases Brown and McNeal provided state each "was seen by Dr. Luther Oakes on 8/13/2020" and "is authorized to return to work on 8/18/2020." Doc. #80-4.

But where, as here, "the evidence presented on [a summary judgment] motion is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper." 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2725.2 (4th ed. 2023). The parties agree that the second work releases stated Brown and McNeal were authorized to go back to work upon return of their COVID-19 test results but argue different interpretations as to whether this language identified the date Brown and McNeal would return to work. Because the FFCRA requires employees seeking to leave under the EPSLA to provide documentation that includes "[d]ate(s) for which leave is requested," 29 C.F.R. § 826.100(a)(2), the parties' conflicting interpretations raise a material factual issue.[21] So the defendants' motion for summary judgment on the paid sick leave claim will be denied.[22] *See Butler v. Gualtieri*, 41 F. 4th 1329, 1334 (11th Cir. 2022) ("Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.") (citing *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969)).

## B. Retaliation

The defendants argue the Acting Secretary's EPSLA retaliation claim fails because the

---

[21] It appears the Fifth Circuit has not addressed whether this issue raises a question of fact, a question of law, or a mixed question of law and fact. An opinion from the Eastern District of Pennsylvania interpreting the EFMLEA—the other division of the FFCRA providing temporary relief to workers during the pandemic—held the adequacy of notice under the FFCRA to be a question of fact. *See Hartzell v. Adaptable Sys. Corp.*, No. 21-1873, 2022 WL 1500554, at *16 (E.D. Pa. May 11, 2022) (denying summary judgment on EFMLEA claim because under the FMLA, a similar law, "how the employee's notice is reasonably interpreted is generally a question of fact, not law").

[22] A few courts have suggested that the FFCRA's documentation requirement should not be strictly construed because it provides an employee with flexibility in how and when to provide notice to her employer but they did so in evaluating motions to dismiss, not a motion for summary judgment. *See, e.g., Haddon v. Jesse Stutts, Inc.*, No. 5:20-cv-01830, 2021 WL 3089232, at *2 (N.D. Ala. July 22, 2021) (denying motion to dismiss paid sick leave claim because "[t]he regulations do not establish strict notice requirements .... Rather, they allow the employee flexibility to provide notice of the need for leave "as soon as practicable," and they permit the "facts and circumstances of the particular case" to govern the reasonableness of an employee's notice.) (quoting 29 C.F.R. §§ 826.90(a)(1)-(2), 826.90(b)).

defendants did not terminate Brown and McNeal's employment since Brown and McNeal quit by failing to communicate or return to work.  Doc. #81 at 8–9.  The Acting Secretary responds that the defendants have not cited to evidence in the record to support their assertions.  Doc. #85 at 10.  The Acting Secretary also argues that by the defendants' own admissions, Brown and McNeal did not stop communicating with the defendants but were terminated. *Id.* at 9–10.  The defendants did not reply to the Acting Secretary's arguments.

As explained above, EPSLA retaliation claims are evaluated under the Title VII framework, the first step of which requires a plaintiff to establish a prima facie case of retaliation. *Wilson*, 2023 WL 3151078, at *3.  A prima facie case of retaliation consists of engagement in protected activity, an adverse employment action, and a causal link between the protected activity and the adverse employment action. *Bourgeois*, 507 F. App'x at 388; *see Atwood*, 2022 WL 185187 at *8 (stating elements of a prima facie case under the FFCRA).  The defendants appear to argue that the Acting Secretary has not established the adverse employment action prong[23] because, based on Jackson's deposition testimony, Brown and McNeal "simply disappeared" and did not communicate with the defendants or return to work on August 18, 2020—when the first work release indicated they would return—or any time after August 18.  Doc. #81 at 8–10; Doc. #80-2 at 45–51.  However, as the Acting Secretary argues in response, the defendants admitted in their answer that they communicated with Brown and McNeal on August 18, 2020, and on August 19, 2020.  Doc. #85 at 9; Doc. #1 at 5–6.  Because facts admitted in the answer are "conclusively binding," the defendants may not argue on summary judgment that Brown and McNeal failed to communicate on these dates. *Bank of N.Y. Mellon v. Riley*, No. 21-40383, 2022 WL 1773364, at

---

[23] The defendants generally argue that they "adhered to the requirements of the FFRCA [sic]."  Doc. #81 at 6.  Although the defendants do not explicitly mention retaliation or that the Acting Secretary has not established the adverse employment prong of the retaliation claim, they do argue "[Brown and McNeal] were never terminated." *Id.* at 8.

*2 (5th Cir. June 1, 2022) (citation omitted); *see Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013) (at summary judgment stage "[a] party … may not rebut a judicial admission made in its pleadings with new evidence or testimony") (citation omitted). Accordingly, the defendants fail to carry their summary judgment burden of "pointing out that the record contains no support for the [Acting Secretary]'s claim" of retaliation and their motion for summary judgment as to the Acting Secretary's retaliation claim will be denied. *Wease*, 915 F.3d at 997 (citation omitted).

### C.  Small Business Exemption

The defendants alternatively argue all the Acting Secretary's claims fail because they are exempt from the FFCRA based on the small business exemption. Doc. #81 at 10–11. The Acting Secretary responds that the defendants are not exempt from the FFCRA and have nonetheless waived this defense by failing to raise it as an affirmative defense in their answer. Doc. #85 at 11. The defendants did not reply to the Acting Secretary's arguments.

Failure to raise an affirmative defense in the answer can constitute waiver of that defense[24] but the Fifth Circuit has held that if an affirmative defense is raised at a "pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond," the defense may be considered. *Quintel Tech Ltd. v. Huawei Techs., Inc.*, No. 4:15-cv-307, 2017 U.S. Dist. LEXIS 186658, at *11 (E.D. Tex. July 14, 2017) (quoting *Solomon v. Spalitta*, 484 F. App'x 883, 884–85 (5th Cir. 2012)). Defenses raised for the first time on summary judgment "may be excused so long as the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise. The concern is that the plaintiff will not have a chance to rebut the defense." *Solomon*, 484 F. App'x at 884–

---

[24] *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (4th ed. 2023) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule of Civil Procedure 8(c) results in the waiver of that defense and its exclusion from the case.").

85 (cleaned up). Because the Acting Secretary responded to the defendants' small business exemption defense, the Court will consider the defense.

The FFCRA exempts certain employers with fewer than fifty employees from its paid sick leave requirement. 29 C.F.R. § 826.40(b)(1). To qualify for this exemption, an employer must document that an officer of the business determined compliance with the paid sick leave requirement would jeopardize the viability of the company based on specific criteria[25] and retain the record of such determination in its files. 29 C.F.R. 826.40(b)(2). However, the defendants do not cite evidence showing they documented that any officer of the business made such a determination. *See* Doc. #81 at 12–13.[26] Therefore, the defendants' alternative small business exemption argument is without merit. *See Kofler v. Sayde Steeves Cleaning Serv., Inc.*, No. 8:20-cv-1460, 2020 WL 5016902, at *4 (M.D. Fla. Aug. 25, 2020) (denying employer's motion to dismiss FFCRA claim based on the small business exemption when there were no allegations the employer elected the exemption or satisfied its requirements). Accordingly, the defendants' summary judgment motion will be denied to the extent it seeks summary judgment on all the Acting Secretary's claims based on the FFCRA's small business exemption.

---

[25] An employer asserting the small business exemption must document that an authorized officer of the business determined (1) the leave requested would result in the business' expenses and financial obligations exceeding revenue and cause the business to cease operating at minimal capacity, (2) the workers' absence would impose substantial risk to the business because of their specialized skills, or (3) there are not sufficient able, willing, and qualified workers to perform the labor or services provided by the workers requesting leave. 29 C.F.R. §§ 826.40(b)(1)(i)–(iii), 826.40(b)(2).

[26] The only support the defendants offer for their argument that they are exempt from the FFCRA due to the small business exemption is:

> According to the testimony of the only two witnesses for Defendants, JESSE TALIAFERRO and TRACY JACKSON, Defendants cannot find enough other workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services the employee or employees requesting leave provide, and these labor or services are needed for the small employer to operate at a minimal capacity.

Doc. #81 at 12–13. However, this statement does not show that the defendants documented that an officer of the business determined compliance would jeopardize the viability of the business for these reasons.

**VI**
**Conclusion**

Based on the above:

1.     The Acting Secretary's motion for summary judgment [77] is **GRANTED in Part and DENIED in Part**.  It is GRANTED as to the retaliation claim and as to back wages, compensatory damages, and liquidated damages related to the retaliation claim.  It is DENIED in all other respects.

2.     The defendants' motion for summary judgment [80] is **DENIED**.

**SO ORDERED**, this 4th day of March, 2024.

/s/Debra M. Brown_____
**UNITED STATES DISTRICT JUDGE**